Good morning, Your Honor. John Peyer, representing Kevin and Lily Rosa, and if I could, I'd like to reserve five minutes for rebuttal. You may do so. Just watch the clock. Thank you. The issue before this Court is whether the lower court properly granted summary judgment by finding there was no possibility that plaintiff could prove consummation of the credit transaction. That finding is contrary to the law of this case, as held in the first appeal by this Court, and also goes against the decisions from the Fourth and the Eleventh Circuits in Nye v. Coons and Bragg v. Boehrer, respectively. The key holding in those cases is once the consumer has committed to the deal and the financing is within the total control of the dealer and the lender, the transaction is consummated for truth-in-lending purposes. The facts in this case are as follows. Plaintiffs came in to Cutter to sell their old car as they had just bought a new truck, a new Mazda truck. They were talked into buying another truck by the salesman and trading the truck they had just bought with an old car. The Rosas told the salesman at Cutter that they were concerned... I'm interested in your perspective on the following. It seems to me that the real issue, the only issue really, is whether the credit sale agreement was signed by the parties. Do you agree with that? Not exactly, but that issue's already been decided, I think, in the first appeal. And what is your construction of the first appeal? The first appeal says that, and as the addendum to the credit sale contract was clearly signed, and it states by its own terms that it's the first page of the credit sale contract. Okay, where are you referring to in that previous appeal that says what you're just contending? The court said the complaint necessarily relied upon the credit sale contract of which the addendum was a part. And that we've cited that on page three of our reply brief, that quote. Are you arguing law of the case? Yes. And that's a formal determination in your view? Yes. It says that it dealt with the same issue, and it said the complaint necessarily relied upon the credit sale contract of which the addendum was a part. The addendum says by its own terms that it's the first page of the credit sale contract, and that it's not a cancelable deal. This is Cutter's form. We didn't make up that. Well, let's assume for the sake of argument that the issue has not yet been resolved. Okay. What's your view? If not, it really doesn't matter because the Hawaii law says any writing can be sufficient to... Well, here, hang on just a second for me. In chapter 476, the credit sale contract is specifically defined as any agreement or form of instrument evidencing an obligation to pay for the price of goods in a credit sale. Exhibit B, the purchase order, is such an agreement. It shows a down payment of $5,000 and a balance due of $22,710. So that document alone is enough. Now, the lower court said that document wasn't signed by the seller, but that's just not correct. You can see... Counsel, I've practiced business law for 37 years. I've read a lot of contracts, and this one seems pretty straightforward to me. I'm looking at the addendum. An addendum is something that gets attached to a contract. It doesn't state in here that it was incorporated by reference. It simply says it's attached to and intended to be the front page of. But then it says Section 1 and 2, which is on this particular page, must be read and signed prior to signing the credit sale contract. So, obviously, the drafter of this document must have intended that the credit sale contract stood on its own. This had to be signed first. Arguably, they could have signed this and not signed the sale contract. They could have signed the sale contract and not this if this got backwards. But there's nothing in here that I can find or in the credit sale agreement itself that says that these documents incorporate one another by reference. Am I missing something? Well, I think so. It says it's the first page of the credit sale contract, and it's not supposed to be a trick to defeat a borrower's right under Truths in Lending. I mean, they signed, like, nine or ten documents, many of which said the deal is not cancelable. They were promised. They said, don't worry about financing. This is a done deal. You just give us your cars. We'll take care of it. This is a done deal. Financing is our problem now. And then they leave. The cutter doesn't make payments on their new Mazda truck. By the time they come back six weeks later, there's no – the truck has been repossessed. But the narrow question is still, is the original agreement, which was never signed, a valid agreement simply by the signing of the addendum? Now, that particular issue has not been decided by Hawaii law, has it? There's no Hawaii case on that, is there? I don't think it's been decided by Hawaii law. I thought it was decided in a prior decision by this court because it said the addendum – the credit sale contract of which the addendum was a part. If it's a part of the credit sale contract – Well, I understand your argument, but, again, indulging the court for just a moment, to the extent that this could be a legal issue. Right. Would it make sense to certify this issue to the Hawaii Supreme Court and let them decide as a matter of law whether a contract which is never signed becomes enforceable if an addendum is signed? Possibly. I don't think that issue has been decided. However, again, the Exhibit B, the purchase order, is clearly signed by both parties, and it says if you don't pay, you'll be sued. And it's not the credit sale contract only that determines whether there's consummation. The statute says – Yeah, but this is a truth-in-lending case, right? Don't you have to – you don't have a claim, do you, unless the contract is a valid contract? Yes, but if there's consummation, if there's an existing obligation under Hawaii law, which I think is what you're getting at under Exhibit B, which was signed and is binding and says if you don't pay, you're going to be sued, then they have to give proper disclosure. And the disclosure statement doesn't need to be signed. In many cases, disclosure statements, truth-in-lending disclosure statements, aren't signed. So if there was consummation by the purchase order and all of the other documents, or based on the promises, the oral promises of Cutter, then there is consummation, and then truth-in-lending applies. Following up on what Judge O'Scanlan said, it seems to me that what you've pled is a truth-in-lending act case. That's really where you're going. I don't know whether there's an attorney fee clause in that statute. That's why you're in federal court, right? So ultimately, that's really what we're dealing with here, I believe. Is that correct? Yes, that is correct. Okay, you know, clearly a lot of sloppiness involved here. There's no question about that. Whoever handled the signing didn't do it very well. But I'm still puzzled as to how, putting aside for a moment your construction of the earlier decision by a panel of this court, I'm puzzled as to how you believe that this document, that the one-page addendum, is a signature of the credit-sale agreement. What are you relying upon in this document that says that that incorporates the terms of the credit-sale agreement? You have to look at this through the eyes of the consumer. It says it's the first page of the credit-sale contract. You're contending that your client read the document carefully? No, I'm not. They may have, they may not have. But the point is, it's Cutter's document. If that's what it says, they're bound by it. And if there's more than one construction that's fair to read, and I think there is, at least you can say if it's the first page of the contract, it's part of the contract. And that's what the court found before. And I think that's a fair finding. And certainly, if you read this through the eyes of the consumer, which I think you're required to do, then that is the reason. Well, isn't the reality that the reason why this as-is provision in the door-to-door sale notice has to be signed first is because Hawaii law requires you to do this? Isn't that what we're dealing with here? I don't think so. Doesn't there have to be a provision in here that the vehicle is sold as-is and that there's no door-to-door sale and no right to cancel it? Yes, but that's separate. I understand that. That's my point. This document is separate. It has those two provisions in it that are important, and the dealer wants to get those signed because it doesn't want there to be a three-day cancellation, right? And that's something that comes out, I assume, under Hawaiian law, right? Yes. Unless it's waived. Right. So they want this to be signed, and they want that on the front of the other document because it's all part of the package that gets squared away. But it then goes on to say that until this Section 1 and 2 are signed, you don't sign the credit sale agreement. Well, even any document that's signed that reflects a deal is sufficient for a contractual obligation under Hawaiian law. Once there's a contractual obligation under Hawaiian law, and Exhibit B does do that, whether you think the credit sale contract should or shouldn't, the purchase order does, once there's an obligation under Hawaiian law, then there's consummation and truth in lending applies and disclosures need to be made. Now, Cutter is looking at this one phrase, subject to lender's approval, in a contract that it claims that's not binding. And I'll grant you that. That's not exculpatory under the truth in lending law. But my problem is not that, but rather the construction of this document. Even if there were no documents, if I go into a dealer, or my client is in a dealer, and they say, we guarantee you financing. Don't worry. This is a done deal. They're responsible for that. What can the consumer do? And then they give them the car for six weeks. They think it's done. They don't make their payments because the other cars are supposed to be paid off as part of the deal. We understand your argument, counsel. Our questions took you two minutes over your time, so your time has expired. We'll hear from the other side. Good morning, Your Honors. I'd like to briefly address some of what Mr. Pearce said. Would you please introduce yourself? I'm sorry, Your Honor. Jan Weidman on behalf of the defendant, Cutter. Mr. Weidman. The law of the case. The law of the case he's quoting is not quite what eventually occurred. I assume the panel is familiar with the procedural history here. It was amended, was it not? It was. The motion on judgment on the pleadings was granted. It was appealed. The appeal was affirmed. The decision was affirmed. In the interim, the nigh case came down, and Mr. Pearce requested a full panel hearing, and the decision was reversed. I requested a re-hearing, and the decision wasn't reversed, but it was amended to indicate that there was a question of fact as to whether or not two Hawaii statutes formed a contract. Right. Now, this is what the amended disposition says now. That's the law. The fact that the Rosas signed the addendum and accepted the goods created a triable issue of fact regarding whether the Rosas became contractually obligated, right? That's correct. Thereby precluding entry of judgment on pleadings now. So, apparently it's the law of the case that whether or not signing the addendum created, you know, resulted in the binding contract is an issue of fact. Correct. Now, but there doesn't seem to be any facts that would resolve this factual issue. Well, in fact. Everybody seems to be treating it as a question of law. It is a question of law, Your Honor. Well, no, but this opinion says it's a question of fact. Well, it's a question of fact. Isn't that the law of the case? It's a question of fact to be determined by the trier of facts. Right. And the trier of fact was presented with a summary judgment motion, which was again granted, and we're here on an appeal from that summary judgment motion. Well, what new facts were presented that would, you know, clarify this issue of whether or not the Rosas became contractually obligated under Hawaii law? The Rosas would not become contractually obligated. Well, let me start from the beginning. In essence here, there are two separate documents that we're talking about. We're talking about the retail buyer's order, which is an order for a car which calls for a cash payment, a $3,000 down, and I believe it was around $22,000 to be paid within seven days. Both parties signed that, and that document says this contract is conditioned upon approval of financing. Now, I understand that that is no longer the law regarding truth in lending, but it is still the law, conditioned precedent is still the law regarding the law of contracts. So we had a cash contract that had to be paid within seven days. The down payment was never fully made. The money was never remitted. Simultaneously, the business model calls for simultaneous execution of the credit sale contract. It wasn't signed in this case. I believe there was a question from the bench to counsel regarding what 476 states, and 476 states specifically the credit sale contract shall be in writing and it shall be signed by the parties provided that if a portion of the agreement is contained in a separate part, the separate part shall be separately signed. Both parts had to be signed for there to be a legitimate binding credit sale contract that contained financing terms such to trigger the Truth in Lending Act. Nye came down from the Fourth Circuit and discussed the fact that an unfunded agreement can be subject to a truth in lending violation. So be it. Gibson and a number of the other cases actually that counsel cited clearly sets forth what's required, and the circuits have delineated the difference between being obligated to a contract and being obligated to a credit obligation, and therein lies the difference. Consummation occurs when the consumer is bound to a specific credit obligation and can no longer shop for credit. That did not happen here. In fact, if we were to take this to its ultimate absurdity, the people that bought this car could have driven around the block, looked at each other and said, well, we don't really want to do this, brought it back, and it would have been within their legal right to return the vehicle because they were not obligated to any credit transaction. They didn't do that. They kept the car. Well, as you say now, on the first appeal, this court accepted Nye, right? As a law of the circuit, in other words, an unfunded contract can result in triggering the Truth in Lending Act. Yes, it does say that. All right, now, so if that's true, what takes this out of the Act? What kicks this out of the Act is there was never an obligation to any specific credit. There was no obligation to any credit. The one document both parties signed had... Well, it was unfunded, but there was no obligation for them to accept the credit. The Truth in Lending Act is designed to protect the consumer so they can shop for credit. The Reg Z explanation to it indicates that you can have some financial commitment, you can indeed be bound by contract, and still there would be no consummation. Consummation is a federal term. What constitutes consummation is a state issue. Now, with respect to the state issue, do you agree with your opposing counsel that there is no Hawaii law on this very narrow issue of whether an unsigned contract can somehow be enforced if there is an addendum to it which is signed? There is a Hawaii law, 476-3. It says if a portion of the agreement is contained in a separate part, the separate part shall be separately signed, which means that both parts have to be signed. That's correct, Your Honor. So you're relying on the statute? I am relying on the statute. That's what the last panel sent down, said that under these particular laws of Hawaii, is there a binding contract? Well, then what do we do with this amended opinion or memorandum disposition which says it's still a question of fact? Well, we presented facts sufficient to the lower court to indicate that we comported with all of the requirements, issues, and statutes. Are you suggesting perhaps that the lower court has met the obligation of our prior amended disposition by either actually or inferentially determining as a matter of fact that there was a contract? I think as a matter of law, Your Honor. They determined as a matter of law that there were no facts sufficient to allow for this. When you say they, you mean the district court? Yes. Well, and okay, did this matter of this language of the amended disposition come up in your hearing before the district court? Yes, it did. It came up in my brief. But did the judge say anything with respect to that particular passage about a question of fact? He posed the question in his order as to whether or not signing the amended one-page document was sufficient, and he concluded that it was not sufficient. He didn't say as a matter of fact and as a matter of law or language to that effect? I don't believe so, Your Honor. Okay. Anything further? I would only in summation ask the court to carefully read the Gibson matter. It's quite clear in Gibson which followed Nye, and, in fact, they even refer to Nye in Gibson saying, just to make sure you people understand what we're talking about, I'm paraphrasing, we are now laying, we are setting forth the rules for this to have occurred. And in it they say that it's when the customer becomes contractually bound. It's also important to remember that the first document to which Mr. Perry refers was not a credit sale contract. It was a contract. It didn't have any credit terms in it. And thank you. I must say I find it somewhat amusing that the sides are on opposite presumptive positions here. Yes. The trial court did too. Okay. Thank you, Your Honor. All right. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Tashima, Smith